IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Mejia, | No. CV-16-00654-TUC-JAS |
| Plaintiff, | **ORDER** |
| v. | |
| Bimbo Bakeries USA, Inc., | |
| Defendant. | |

Pending before the Court is Plaintiff's "motion for conditional FLSA class certification and to authorize notice to similarly situated persons under 29 U.S.C. § 216(b) and for expedited discovery." For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff, Teresa Mejia, has filed this collective action suit against Defendant, Bimbo Bakeries USA, Inc. ("BBUSA"),[1] on behalf of herself and all other similarly situated BBUSA Distributors employed in Arizona ("Distributors").

Plaintiff pursues this collective action under the Fair Labor Standards Act ("FLSA") alleging that Defendant failed to properly compensate its Distributors for the overtime hours they worked in violation of the FLSA. Plaintiff argues that Distributors of BBUSA were previously considered and classified as employees of BBUSA. However, Plaintiff argues that BBUSA subsequently and unilaterally made the decision

---

[1] BBUSA owns brands which include SaraLee, Orowheat, Entenmann's, and Boboli. BBUSA employs approximately 22,000 individuals and distributes products through 11,000 sales routes throughout the United States, including 324 in Arizona.

to reclassify all of the Distributors in Arizona as "independent contractors" (as opposed to "employees" of BBUSA) to make an end-run around the requirements of the FLSA such that BBUSA could avoid compensating them for the many hours of overtime work that they are constantly required to perform for BBUSA.

Plaintiff argues that BBUSA's unilateral decision to reclassify its distributors as independent contractors is erroneous and improper. Plaintiff argues that the Distributors must be considered employees of BBUSA as BBUSA closely and uniformly regulates and controls nearly all of the substantive daily aspects of the Distributors' duties for BBUSA such that they are similarly situated employees of BBUSA (as opposed to independent contractors) that must be compensated for years of unpaid overtime as mandated by the FLSA.[2]

**DISCUSSION**

**Conditional Certification Under the FLSA**

Congress implemented the FLSA to protect employees from oppressive working hours and substandard wages. *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981).[3] "Under the FLSA, covered employees are entitled to overtime wages at a rate of one-and-one-half times their regular rate for hours worked in excess of forty hours per week, unless an exemption applies . . . Under Title 29 U.S.C. § 216(b), an employee may bring [a collective FLSA action] . . . to recover unpaid overtime wages." *Barrera v. US Airways Group, Inc.*, 2013 WL 4654567, *1 (D. Ariz. 2013).

A collective action under 29 U.S.C. § 216(b) of the FLSA is authorized if: 1) the employees are "similarly situated" and 2) the employees give written consent to becoming opt-in plaintiffs in the lawsuit. *See Stickle v. SCI Western Market Support*

---

[2] As of the filing of Plaintiff's reply, sixteen Distributors have opted into this case and signed consent forms indicating they are similarly situated to Plaintiff inasmuch as they are subject to BBUSA's same uniform policies and were not paid overtime. *See* Doc. 46 at p. 3 (page citations in this Order refer to the computer-generated CM/ECF page numbers appearing in the upper right hand corner of documents), lines 1 to 4.

[3] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing case law throughout this Order.

*Center, L.P.*, 2009 WL 3241790 at *2 (D. Ariz. 2009); 29 U.S.C. § 216(b).[4] A court has the discretion to determine whether a plaintiff and proposed opt-in plaintiffs are similarly situated. *See Stickle*, 2009 WL 3241790, *2.

Federal District Courts have used at least three different approaches to determine whether plaintiffs in a collective action are similarly situated for the purposes of 29 U.S.C. § 216(b): "1) a two-step, case-by-case approach, 2) an incorporation of Rule 23 of the current Federal Rules of Civil Procedure approach, or 3) an incorporation of the pre-1966 version of Rule 23 for spurious class actions." *Stickle*, 2009 WL 3241790, *2.

The FLSA does not define the term "similarly situated," and although the Ninth Circuit has not addressed which standard must be applied and has not otherwise construed the term "similarly situated," the majority of District Courts, including those in the Ninth Circuit and in the District of Arizona, have predominantly used the "two-step, case-by-by case approach" in FLSA collective actions. *See id.*; *see also Barrera*, 2013 WL 4654567, *2 (D. Ariz. 2013); *Coyle v. Flowers Foods, Inc.*, 2016 WL 4529872, *3 (D. Ariz. 2016).

"Under the two-step approach, the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated . . . This requires the court to first make an initial notice stage determination of whether plaintiffs are similarly situated." *Stickle*, 2009 WL 3241790 at *2.

"At this first stage, the court require[s] nothing more than substantial allegations

---

[4] Unlike class actions brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, the FLSA provides for participation in a collective action suit only on an opt-in basis. *See Stickle*, 2009 WL 3241790 at *2; 29 U.S.C. §216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also Barrera*, 2013 WL 4654567, *1 ("In order to make certain that potential collective class members are notified of the action and their right to take part, the courts may authorize the issuance of notice by the named plaintiff in an FLSA action to all other putative class members . . . Unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, individuals who wish to join a collective action must affirmatively opt-in to the class by filing a written consent with the court.").

that the putative class members were together the victims of a single decision, policy, or plan . . . If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit." *Id.*; *see also Barrera*, 2013 WL 4654567, \*2 ("If the plaintiff demonstrates that the proposed class members are similarly situated, the court conditionally certifies the class and directs notice to the potential class members informing them of their right to join the collective action.").

"Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify filed by defendants, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims." *Id.*; *see also Barrera*, 2013 WL 4654567, \*3 ("The second step of the certification process occurs at . . . the completion of discovery and is generally prompted by a defendant's motion for decertification. At that stage, the court . . . makes a second determination, utilizing a stricter standard of similarly situated.").

At stage one, however, "[a]ll that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA . . . Given the light burden, motions to conditionally certify a class for notification purposes are typically granted." *Stickle*, 2009 WL 3241790, \*3; *see also Barrera*, 2013 WL 4654567, \*2 ("The court makes this [stage one] determination based on the pleadings and any declarations that have been submitted . . . The plaintiff must demonstrate a reasonable basis for asserting that a proposed class of employees is similarly situated.").

"To proceed to the notification stage of the litigation, Plaintiffs' allegations need neither be strong [n]or conclusive . . . The evidence must only show that there is some factual nexus which binds the named plaintiffs and the potential class members together

as victims of a particular alleged policy or practice." *Stickle*, 2009 WL 3241790, *3. "Courts recognize that collective action notification normally occurs before the Parties have had the chance to engage in extensive fact discovery . . . That is why in making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action . . . It is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits . . . at the preliminary certification stage of an FLSA collective action." *Id.*; *see also Coyle*, 2016 WL 4529872 at *3 ("Ultimately, whether a collective action should be conditionally certified is within the discretion of the court . . . The court should not review the underlying merits of the action, nor should it resolve factual disputes . . . at the preliminary certification stage of an FLSA collective action.").

Unlike the second stage of the process where the standard is more stringent, "Plaintiff's burden [for conditional FLSA certification at stage one] is light." *Id.* at 3; *see also Coyle*, 2016 WL 4529872 at *3 (plaintiffs have a "low burden" at stage one of the FLSA certification process); *Barrera*, 2013 WL 4654567, *2 ("This is a lenient standard [at stage one of the FLSA certification process] because the court has little evidence at this stage and the usual result is conditional class certification.").

A review of the pertinent pleadings and declarations reflect that Plaintiff has met her light burden for conditional FLSA certification at stage one of this litigation.

BBUSA is a bakery company that distributes and sells baked products through retail outlets such as grocery and convenience stores. BBUSA negotiates contracts with retailers, and these contracts control the price of BBUSA's goods and the timing of deliveries. Currently, 324 BBUSA routes exist in Arizona that are serviced by Distributors[5] operating pursuant to uniform BBUSA policies and procedures. Distributors are assigned to a specific BBUSA depot where baked goods are stored for

---

[5] Plaintiff has been working for BBUSA (or its predecessors in interest) since 2001. Plaintiff received a salary and benefits until 2004 when Plaintiff, and other Distributors such as her, were terminated and informed they could purchase a "route" as an independent driver. Plaintiff purchased her first delivery "route" for approximately $74,000.

1  future distribution.  Distributors go to their assigned depot early each morning, retrieve
2  baked products and deliver them to BBUSA's customers such as grocery and
3  convenience stores.  While at these stores, Distributors stock and arrange BBUSA's
4  goods, remove old or damaged products, and rotate stock on the shelves pursuant to
5  BBUSA's policies.  Thereafter, Distributors return to the depot and input customer orders
6  for future products.  Distributors often use their personal vehicles to make frequent "pull-
7  ups" at stores where they are required to monitor BBUSA products, and they commonly
8  must work over forty hours a week to perform their specified duties for BBUSA, but are
9  nonetheless not paid overtime wages.

10       In 2011, BBUSA disseminated a Franchise Operational Guidelines Manual to the
11  Distributors ("Manual").  The Manual contains policies and procedures that detail the
12  Distributors' duties and how they must be performed, including: Distributors must use a
13  compatible handheld computer loaded with BBUSA's software in performing their daily
14  tasks, the specific requirements for every major grocery store that must be adhered to by
15  Distributors (i.e., such as specific times and the number of days BBUSA's products must
16  be delivered), and how Distributors are to be paid (i.e., a "settlement" process that does
17  not include compensation for overtime). Distributors operate in accordance with a
18  uniform Distribution Agreement which classifies them as independent contractors.
19  BBUSA's policies dictate when Distributors can be in a depot, when they can arrive and
20  when they must leave retail outlets, and what promotions they must be apprised of.
21  BBUSA's District Manager can unilaterally change orders that Distributors make on a
22  daily basis. BBUSA's policies govern how Distributors must order products for
23  distribution, dictate that the only baked goods Distributors can deliver are BBUSA's
24  baked goods, set the prices for products delivered by the Distributors, specify how
25  BBUSA's products must be arranged at retail stores, control the profitability of
26  Distributors as BBUSA must serve as the "agent" of the Distributor as BBUSA pursues
27  business opportunities and negotiates BBUSA's product prices for the Distributors, and
28  BBUSA's District Manager has the authority to reprimand Distributors for failure to

comply with BBUSA's policies and procedures.

The Court finds that Plaintiff has satisfied the light burden necessary to demonstrate that she and other similarly situated BBUSA Distributors in Arizona[6] were improperly classified as independent contractors by BBUSA and did not receive proper overtime compensation in violation of the FLSA.[7]

Conditional certification of this collective action is warranted, and Plaintiff's motion is therefore granted. *See Barrera*, 2013 WL 4654567, *2 ("If the plaintiff demonstrates that the proposed class members are similarly situated, the court conditionally certifies the class and directs notice to the potential class members informing them of their right to join the collective action."); *Coyle*, 2016 WL 4529872 at *6 ("The district court has discretion regarding the form and content of the notice."). The Court has reviewed Plaintiff's proposed notice (Doc. 23-1, pp. 3-7), finds that it is

---

[6] Defendant has shown Distributors for BBUSA throughout Arizona are similarly situated, and the Court therefore declines to limit this collective action to only Tucson.

[7] Although some Distributors entered into a Franchise Agreement with a different BBUSA-owned brand, the agreements are nonetheless substantially the same, BBUSA is the successor in interest to those entities, and the Agreements are otherwise under the umbrella of BBUSA-owned companies. The Court notes that BBUSA's response primarily raises issues (i.e., various exemptions showing that the Distributors are not employees, certain Distributors could be subject to arbitration, that there are numerous individualized determinations undermining a viable collective action) that are more appropriately considered in the second stage of this action where discovery has been completed and the standard is more stringent; these issues are not a bar to conditional certification under the low burden of stage one in this FLSA collective action. *See e.g.*, *Barrera*, 2013 WL 4654567, *5 ("The Court does not resolve factual disputes regarding . . . job descriptions or job duties at this first step of the certification process . . . Additionally, the potential applicability of an FLSA exemption does not preclude conditional certification . . . Any variation in the putative class members' job responsibilities is a factor to be considered at the second stage of the analysis after completion of discovery."); *Stickle*, 2009 WL 3241790, *3 ("Courts recognize that collective action notification normally occurs before the Parties have had the chance to engage in extensive fact discovery . . . That is why in making a determination in whether to conditionally certify a proposed class for notification purposes only, courts do not review the underlying merits of the action . . . It is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits . . . at the preliminary certification stage of an FLSA collective action."); *Coyle*, 2016 WL 4529872, *3 ("Ultimately, whether a collective action should be conditionally certified is within the discretion of the court . . . The court should not review the underlying merits of the action, nor should it resolve factual disputes . . . at the preliminary certification stage of an FLSA collective action . . . The potential applicability of a FLSA exemption . . . does not preclude conditional certification at step one; it is relevant at step two of the two-step approach.").

- 7 -

fair and accurate, and hereby approves the proposed notice. BBUSA shall produce the names and last known addresses of all current and former BBUSA Distributors in Arizona from September 30, 2013 to the present within 30 days of the filing date of this Order such that Plaintiff can expeditiously provide notice. Individuals interested in participating in this action must return their consent forms to Plaintiff's counsel in time for their consent forms to be filed within 90 days of the mailing of the notice.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's "motion for conditional FLSA class certification and to authorize notice to similarly situated persons under 29 U.S.C. § 216(b) and for expedited discovery" (Doc. 23) is granted.[8]

Dated this 14th day of August, 2017.

Honorable James A. Soto
United States District Judge

---

[8] As the Court would not find oral argument or additional briefing helpful in resolving this matter, oral argument and the motion to file a sur-reply (Doc. 48) are denied.